## TEXAS INDEMNITY INS. CO. v. CARSON.
### (No. 2362.)

Court of Civil Appeals of Texas. El Paso.
Oct. 10, 1929.

Rehearing Denied Nov. 14, 1929.

A. T. Folsom, of Wink, for appellant.

C. R. Fields, of Wink, Hill D. Hudson, of Kermit, and L. B. Godwin, of Borger, for appellee.

WALTHALL, J. - This suit was brought by the Texas Indemnity Insurance Company to set aside an award made to C. L. Carson by the Industrial Accident Board, by reason of an injury to Carson's right index finger sustained while he was bolting up steel tanks for the Chicago Bridge & Iron Works in Winkler county. Carson filed formal answer and also a cross-action asking compensation on the basis of total permanent disability to his right index finger. On a trial before a jury on special issues submitted, the jury found that Carson sustained personal injury; that, as a direct result of the injury sustained, he suffered total loss of the use of his right index finger; that the injury so sustained will be permanent; that Carson's average weekly wages on that day (April 21, 1928) were the sum of $57.60.

On the jury's findings, the court entered judgment in favor of Carson and against Texas Indemnity Insurance Company for compensation at the rate of $20 per week "from and after and beginning to accrue on the 28th day of April, 1928, being the 8th day following the inception date of the injury on the 21st day of April, 1928, and for the definite and fixed period of forty-five (45) weeks therefrom," and interest at the rate of 6 per centum on each weekly installment of compensation of

$20 from the respective maturity date of each until the date of judgment, April 12, 1929.

Appellant filed its motion for a new trial, the several grounds submitted here being:

"(1) The testimony was insufficient to prove that at the time of the injury, defendant (Carson) was in the employ of the Chicago Bridge & Iron Works.

"(2) The testimony was insufficient to show that defendant (Carson) had worked at the same or similar employment for approximately a year next preceding the injury.

"(3) The testimony was insufficient to show total loss or disability of index finger.

"(4) The verdict of the jury is contrary to and not supported by the evidence in this: That the testimony failed to prove that the stiffness of the finger complained of was the direct and proximate result of the injury and such disease and infection naturally resulting therefrom, but on the other hand showed that a part of the disability suffered by defendant (Carson) was due to his own neglect and refusal to permit proper medical and surgical treatment."

(5) Refers to remarks of counsel for Carson in his argument before the jury, which appellant insists were prejudicial.

### Opinion.

■■ Taking up appellant's assignments in the order indicated, does the evidence sufficiently show that at the time of the injury Carson was in the employ of the Chicago Bridge & Iron Works?

Carson testified: "My occupation is tank building. I was living in Wink, Winkler County, Texas, on or about April 21st, 1928, and was bolting up steel tanks, 8000 pound steel tanks. On that date I was employed by the Chicago Bridge & Iron Works. I was pursuing that vocation, actually engaged in that work at that time. The work was being done out west of Wink, about half a mile, I guess. About that date I was bolting up steel, holding a wrench with my left hand and reached down and picked up a maul, and there were two of us there. I struck at the pin and hit a glancing lick and caught my finger between the maul handle and the pin and crushed it. It was the index finger on my right hand. The finger was injured; it was cut nearly plumb through; broken from both sides between the second and third joints. I reported the accident to Slim Walters, assistant foreman of the Chicago Bridge & Iron Works, and he told me to go to the doctor. I went to Dr. Scarborough at Wink, Texas. * * * At the time of the accident my earning capacity was about $10.00 a day. The usual and customary wages of employés for that kind of work ranged from $7.00 to $15.00 per day. I was making about $10.00 a day there doing piecework. * * * I was employed by Slim Walters, assistant foreman to Ed Howell, or something like that. I had been in the business I was in ever since 1919. * * * The last work I did prior to coming to Wink was for the Magnolia Company, all over the State. The last I believe was in Ft. Worth. I was not doing piece work then. I was doing day work and being paid by the day. This was the second day I had worked on this job. I worked one day and had just started work the next morning."

The above is all the evidence pertaining to Carson's employment.

Appellant submits that the evidence shows Carson to have been an independent contractor and not an employee of the Chicago Bridge & Iron Works under the Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309), and therefore not an employee and entitled to compensation under the indemnity policy of the Chicago Bridge & Iron Works. If Carson was an independent contractor in the work he was engaged in at the time of his injury, he was not an employee in the sense in which the term "employee" is used under the compensation statute.

Under article 8309 of our statutes, the word employee is defined to mean a "person in the service of another under any contract of hire, expressed or implied, oral or written," with exceptions which seem to have no application under the evidence here.

The facts and circumstances which surround and enter into Carson's service to the Chicago Bridge & Iron Works are not specifically stated. It is definitely made to appear, however, that at the time of the accident causing his injury he was engaged in bolting up steel tanks, and that in doing so he was employed by the assistant foreman of the Chicago Bridge & Iron Works, the assured, and that, when injured, he reported the accident to such assistant foreman, who directed him to go to a doctor. From expressions used in Carson's evidence, it appears that at the time of the accident he was doing "piecework," an expression not explained. There is nothing, however, in the expression "doing piecework" to indicate that he would be free from the control of the employer as respects the manner in which the details of the work were to be done; or, as said by our Supreme Court in Cunningham v. International R. R. Co., 51 Tex. 503, 510, 32 Am. Rep. 632, in the following definition of master and servant, and referred to by Judge German of the Commission of Appeals, Section B, in Shannon v. Western Indemnity Co., 257 S. W. 522, as being as full or complete and adequate a definition as given by our Texas courts of an independent contractor: "In the first relation, that of master and servant, the master has the right to direct the conduct of the servant and the mode and manner of doing the work, and hence his corresponding liability for an improper execution of the same. * * * 'He is deemed the master who has the supreme choice, control, and direction of the servant, and whose will the

servant represents not merely in the ultimate result of the work, but in all its details.'"

It is there said that, in the relation of employer and independent contractor, there is no such control and direction by the employer over the servant in the details of the work. The evidence, while not as explicit as it might have been in its details, and as to the right of the employees of the Chicago Bridge & Iron Works to direct the conduct of Carson in the ultimate result of the work in which he was then engaged, but the evidence does sufficiently show, we think, his employment in the service of the Chicago Bridge & Iron Works under an express contract of hire and in an occupation peculiar to Carson himself, that of bolting up steel tanks. There is nothing in the evidence to show that Carson's work was contract work by the job, but it does show an average daily wage, substantially, for several years immediately preceding the injury, in the same character of employment in which he was working at the time of his injury, and the trial court applied such wage in the judgment rendered. In the case of Shannon v. Western Indemnity Company (Tex. Com. App.) 257 S. W. 522, and referred to by appellant, Shannon was engaged to surface the floor of a bank building with a floor surfacing machine, and in doing so was killed. In that case Shannon owned the floor surfacing machine, furnished all material, did the work of surfacing the floor according to his own ideas and methods, with the right to employ necessary help, choose his own hours for labor, and was compensated on a basis other than ordinary wages. It was held under the facts disclosed that Shannon was an independent contractor and not an employee within the Workmen's Compensation Act. We think the case on its facts may be distinguished from the case at bar.

■■ Appellant's second assignment cannot be sustained. It is sufficient under article 8309 of our statutes that Carson should have worked at the time of the injury, whether for the same employer or not, "substantially the whole of the year immediately preceding the injury." Carson testified: "I had been in the business I was in ever since 1919. I had been in Wink only two or three days prior to this accident. I came from Austin to Wink, was there only a few days and didn't do any work. The last work I did prior to coming to Wink was for the Magnolia, all over the State."

We think the evidence sufficient to show, prima facie, that he was working "substantially the whole of the year immediately preceding the injury." The Workmen's Compensation Act should be liberally construed in favor of the injured party. Oilmen's Reciprocal Ass'n v. Gilleland (Tex. Civ. App.) 285 S. W. 648.

■ The third assignment questions the sufficiency of the evidence to show a total loss or disability of the index finger. The issue presented is: Does the injury to Carson's finger disqualify him from performing his usual task as a workman on steel tanks, in such a way as to enable him to procure and retain such employment? Texas Employers' Ins. Ass'n v. Wonderley et al. (Tex. Civ. App.) 16 S.W.(2d) 386, and the several cases there referred to. Carson testified: Carson was a stell tank builder. "It was the index finger on my right hand, * * * it is left stiff; * * * no flexibility in those joints; that finger is of no use to me in its present condition. I cannot close my hand or seize and grip any object with that index finger. I have no strength in it. * * * The present condition of my finger (a year after the injury) would not permit me to do the same class of work or to follow the same occupation I was following at the time I sustained the injury."

Dr. McLaughlin testified: Examined Carson's right index finger about a week before the trial. Said: "I found that the joint was still and the finger seemed to be tender. In my opinion the condition of Mr. Carson's finger is such that he could not grip a handle or hammer such as would be required in the performance of manual labor. * * * There is no stiffness in the knuckle joint. The stiffness is in the other two joints. The use of that finger is practically the same as if it had been cut off at the second joint."

The jury found from the evidence Carson "suffered total loss of the use of his right index finger." If Carson cannot "grip a handle or hammer" by reason of the condition of his finger, the loss would seem to extend to "more than the middle and distal phalange" of the finger, as required by article 8306, § 12, to be considered equal to the loss of the whole finger.

Without quoting the evidence, we have carefully read it, and do not concur in appellant's contention that it failed to show that the stiffness of the finger, its disease and infection, was the direct and proximate result of the injury rather than to his own neglect and refusal to permit proper medical and surgical treatment.

■ During the argument to the jury, counsel for appellee remarked: "They should bring in a verdict for the full amount of $900.-00 against the plaintiff; that the plaintiff is a heartless corporation, a foreign corporation at that, and that if it had wanted to do right it would have paid off the award of the Accident Board." Appellant excepted to the remark as improper and an appeal to the passion and prejudice of the jury. The court sustained the exception and instructed the jury to disregard the remark. Appellant assigns reversible error, and refers us to many cases as sustaining its contention. We concur in appellant's contention that the remark far exceeded the bounds of legitimate argument. The remark was not based upon any evidence adduced, did not legitimately belong to or

694

tend to prove or disprove any issue in the case, and could have only the effect claimed for it by appellant, and, under almost any other kind of case, we would not hesitate to reverse and remand solely on account of the remark. However, in this kind of case the statute definitely fixes the amount of the average annual daily wage and the average weekly wage of an employee, and the court so instructed the jury, so that, under the court's instruction, and under the only and uncontroverted evidence as to the wages received by appellee, no other verdict as to the amount could have been returned where there was a total permanent disability. In United States Fidelity & Guaranty Co. v. Weir et al. (Civ. App.) 286 S. W. 565, Judge Stanford of the Waco court discusses the question presented here. The argument there was highly prejudicial and misstated the law. Objection was made, and the court overruled the objection. The statement by Judge Stanford, in overruling the assignment, is lengthy, and we will briefly state that it was there held that improper argument to the jury does not of itself furnish reason for reversal, unless preponderance of the evidence seems against the verdict, or there is reason to believe the verdict is excessive by reason of such argument. A similar holding was made in Western Indemnity Company v. Corder (Tex. Civ. App.) 249 S. W. 316. The Supreme Court in Railway v. Irvine, 64 Tex. 535, said that an improper argument within itself, furnishes no sufficient reason for reversing a judgment; that it is only in cases in which the preponderance of the evidence seems to be against the verdict, or where the verdict seems to be excessive and there is reason to believe the verdict may have been affected by such improper conduct that it becomes ground for a reversal. Under the above authorities the assignment is overruled.

We have not found what seems to us reversible error in the record, and the case is affirmed.