**BRISTOL–MYERS COMPANY,**
**Appellant,**

v.

**Ramon GONZALES et al., Appellees.**

**No. 1016.**

Court of Civil Appeals of Texas,
Corpus Christi.

Dec. 30, 1976.

Rehearing Denied Feb. 17, 1977.

Second Motions for Rehearing Denied
Feb. 28 and March 10, 1977.

---

418

William L. Garwood, Austin, Finley L. Edmonds, Meredith & Donnell, Corpus Christi, for appellant.

Harry F. Maddin, Allison, Maddin, White & Brin, William R. Edwards, Corpus Christi, for appellees.

## OPINION

YOUNG, Justice.

In this products liability case, Bristol-Myers Company, defendant below, appeals from an $800,000 judgment against it and in favor of Ramon Gonzales, plaintiff below, for plaintiff's deafness allegedly resulting from claimed inadequacies in the warnings given by Bristol concerning its prescription drug "Kantrex". The judgment also denied Bristol any indemnity or contribution against the prescribing and treating physician, Dr. Rufino H. Gonzalez, cross-defendant below.

This suit originally sought recovery against Bristol, the manufacturer of Kantrex (kanamycin sulfate), the Upjohn Company, the manufacturer of Mycifradin (neomycin sulfate), and Dr. Gonzalez, for total, irreversible, bilateral deafness brought about by treatment with those drugs for a hip infection while in Memorial Medical Center in Corpus Christi, Texas, in December 1970 and January 1971. The liability of Bristol and Upjohn was claimed to be predicated on their failure to provide adequate warnings and instructions for the safe use of their drugs to the physician and for affirmative misrepresentation with regard to the use of such drugs under theories of negligence and strict products liability [Sections 402A and 402B of the Restatement (Second) of Torts] and on Dr. Gonzalez for negligence in his treatment of plaintiff with the drugs. Prior to trial, plaintiff compromised his claims against Dr. Gonzalez for $100,000.00. He then non-suited both Dr. Gonzalez and Upjohn.

Bristol denied plaintiff's claims and filed a cross-claim against Dr. Gonzalez alleging as defenses negligence and misuse of its drug Kantrex in treating plaintiff, and requesting indemnity or contribution from the physician. In turn, Dr. Gonzalez filed a third-party complaint against Bristol and Upjohn for misrepresentation and inadequate warnings as to the use of its drugs, requesting indemnity and contribution from the manufacturers, but prior to trial he non-suited Upjohn.

In that posture, plaintiff, Dr. Gonzalez and Bristol (the three parties before this Court) went to trial before a jury that found in answer to special issues: 1) that in the 1970 PDR (Physicians' Desk Reference) Bristol failed to give Dr. Gonzalez adequate warnings or instructions (as defined in the charge of the court) with respect to the use of Kantrex; 2) that such failure was a producing cause of plaintiff's deafness; 3) that the statement "Kantrex injection (kanamycin sulfate injection) in concentrations of 0.25 percent in abscess cavities" reasonably implied to Dr. Gonzalez that he could use the drug in such concentration for the irrigation on plaintiff without fear of hearing damage; 4) that Dr. Gonzalez relied on that statement; 5) that the statement was false; 6) that reliance on that false statement was a producing cause of plaintiff's deafness; 7) that Dr. Gonzalez failed to use ordinary care (as defined in the charge of the court) in treating plaintiff; 8) that such failure was a proximate cause of plaintiff's

deafness; and 9) that plaintiff's damages for loss of hearing were $800,000.00.

The trial court, having previously overruled Bristol's motions for directed verdict at the close of all the evidence, thereafter entered judgment on the verdict in favor of plaintiff and against Bristol in the amount of $800,000.00 and overruled Bristol's motion for judgment N.O.V. and alternative motions on the verdict for indemnity or contribution from Dr. Gonzalez. Bristol's amended motion for new trial was likewise overruled. Bristol appeals from that judgment.

A fair summary of the background facts shows these events and circumstances. On November 22, 1970, appellee Ramon Gonzales, then 25 years old, was admitted to Memorial Medical Center, Corpus Christi, Texas, by Dr. Gonzalez, an orthopedist. Ramon had been complaining of pain in his left hip and knee. After some tests, Dr. Gonzalez diagnosed infection in Ramon's hip. On December 20th, Dr. Gonzalez started Ramon on Kantrex tablets. On December 22nd, he changed the administration of Kantrex to intramuscular injection, and between December 22nd and January 5, 1971, a total of 20.5 grams of Kantrex was administered in this way. Dr. Gonzalez performed surgery on Ramon's infected hip on December 23rd. Beginning on that day and continuing to January 4, 1971, the wound in Ramon's hip was subjected to continuous irrigation (or washing) with alternating solutions of Bristol's Kantrex and Upjohn's neomycin sulfate.

Both Bristol's Kantrex and Upjohn's neomycin were known to be "ototoxic" (having potential to cause deafness). The mechanical way in which each drug affects hearing (damage to the eighth cranial nerve) is the same. It is not disputed the some portion of the Kantrex and neomycin used in the irrigation was absorbed in the blood and that the cumulative effect of all those ototoxic drugs in the blood, the unknown amount of absorbed Kantrex and neomycin plus the injected Kantrex, resulted in Ramon's deafness.

The literature which Dr. Gonzalez consulted regarding the use of Kantrex at the time of treatment was Bristol's insert for Kantrex injection in the 1970 PDR (Physicians' Desk Reference).

In any event, by the time Ramon was taken off the two drugs on January 5th, damage had been done to his hearing. By February, he was totally and permanently deaf.

■ Appellant has brought forward 38 points of error. It has, however, summarized the points into categories for purposes of argument. We will use appellant's format, generally, in considering its contentions. Among appellant's points of error are several legal insufficiency points ("no evidence" and "as a matter of law"). With each such point, we shall view the evidence in a light most favorable in support of the jury findings and consider only the evidence and inferences which support the findings and reject the evidence and inferences contrary to the findings. *Miller v. Riata Cadillac Company,* 517 S.W.2d 773 (Tex.Sup. 1975). In considering the appellant's factual insufficiency points of error ("insufficient evidence" and "against the great weight and preponderance of the evidence"), we shall examine the whole record to determine whether the evidence supports the jury findings. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

In its first category (points 1, 2, 3 and 4), Bristol contends that recovery is not sustainable under Section 402A, Restatement of Torts (Second) because Dr. Gonzalez misused Kantrex and because Bristol complied with Federal Food and Drug Administration requirements; the warning therefore was adequate as a matter of law. Primarily, Bristol attacks the jury findings favorable to Ramon in special issues 1 (inadequate warning) and 2 (producing cause).

■ For misuse to be a defense, the supplier must show that the use which caused the injury was not reasonably foreseeable. *Heil Co. v. Grant,* 534 S.W.2d 916 (Tex.Civ. App., Tyler 1976, writ ref'd n.r.e.). And if the injury resulting from foreseeable misuse of a product is one which an adequate

warning concerning the use of the product would likely prevent, such misuse is no defense. *Bituminous Casualty Corporation v. Black and Decker Manufacturing Co.*, 518 S.W.2d 868 (Tex.Civ.App., Dallas 1974, writ ref'd n.r.e.).

█ In the 1970 PDR, the appellant Bristol stated:

"Other Routes of Administration: Kantrex injection . . . in concentrations of 0.25 per cent (2.5 mg./ml.) *has been used satisfactorily as an irrigating solution* in abscess cavities, pleural space, peritoneal and ventricular cavities." (Emphasis supplied.)

Without further clarification about what type of irrigation was appropriate, the jury was entitled to infer that Bristol left the door open for a treating physician to use Kantrex as a continuous irrigant. The testimony of Dr. Jones, a witness for Bristol, showed that Bristol intended Kantrex to be used only as a one-time washing of surgical wounds, not as a continuous irrigation. The foregoing demonstrates a reasonable inference that continuous irrigation with Kantrex was reasonably foreseeable because of the statement by Bristol in the 1970 PDR and that the warning was not adequate against using Kantrex as a continuous irrigant. Bristol's misuse as a matter of law contention is without merit.

█ We now consider Bristol's contention that its warning in the 1970 PDR was adequate as a matter of law because it complied with FDA requirements. In that regard, we deem applicable the reasoning in *Rumsey v. Freeway Manor Minimax*, 423 S.W.2d 387 (Tex.Civ.App., Houston [1st Dist.] 1968, no writ). In *Rumsey*, the defendant claimed no liability because he had complied with the respective State and Federal Acts and his label had been approved by the appropriate governmental agencies. The Court of Civil Appeals there said:

". . . Neither the State nor the Federal Act purports to change to the common law duty to warn. It merely authorizes the marketing of specified economic poisons if the statutes and the regulations promulgated are complied with. Neither Act purports to deal with property rights. It makes it a crime to market such a product without complying with the Act. Failure to comply with the Act would be negligence per se. However, a mere compliance does not as a matter of law, in all cases, mean that the party is free from negligence. . . . Whether there is negligence depends on the facts of each case. We are of the view that the statutes and regulations by the agencies merely set minimum standards. Compliance with the standards is evidence on the issue of negligence."

See *Muncy v. Magnolia Chemical Company*, 437 S.W.2d 15 (Tex.Civ.App., Amarillo 1968, writ ref'd n.r.e.). Bristol's contention that its warning was adequate as a matter of law because it complied with F.D.A. requirements is overruled.

Continuing about appellant's first category, we will discuss the assertions of no evidence and against the great weight and preponderance of the evidence relating to the findings of special issues 1 (inadequate warning) and 2 (producing cause).

█ A manufacturer of a product, which to his actual or constructive knowledge involves danger to potential users has a duty to give an adequate warning of such danger. *Crocker v. Winthrop Laboratories, Division of Sterling Drug, Inc.*, 514 S.W.2d 429 (Tex.Sup.1974); *Muncy v. Magnolia Chemical Company*, supra. Where a product contains highly toxic or dangerous ingredients which are not obvious to the typical user, there is a duty on the part of the manufacturer to give an adequate warning of such dangers. In *Muncy v. Magnolia Chemical Company*, supra, adequate warning has been defined as follows:

". . . (1) it must be in such *form* that it could reasonably be expected to catch the attention of the reasonably prudent man in the circumstances of its use; (2) the *content* of the warning must be of such a nature as to be comprehensible to the average user and to convey a fair indication of the nature and extent of the danger to the mind of a reasonably prudent person. . . . the question of

whether or not a given warning is legally sufficient depends upon the language used and the impression that such language is calculated to make upon the mind of the average user of the product.

Implicit in the duty to warn is the duty to warn with a degree of *intensity* that would cause a reasonable man to exercise . . . the caution commensurate with the potential danger. . . . A clear cautionary statement setting forth the exact nature of the dangers involved would be necessary to fully protect the seller. . . ." (Emphasis supplied.) See *Bituminous Casualty Corporation v. Black and Decker Manufacturing,* supra.

■ The form of Bristol's warning was questioned when evidence was introduced showing that Supplement D of the 1970 PDR, and all warnings thereafter, were switched to boxed warnings. In the same light, there is new emphasis provided by Bristol's incorporation of all the warnings and side effects in the box warning at the first of Supplement D, and in all warnings thereafter, rather than intertwining them throughout the entire body as was done in the 1970 PDR.

Challenges to the adequacy of the 1970 PDR's content were raised by introduction of Bristol's pleading and new drug application on tuberculosis. In both of these instances, Bristol stated that audiometric testing was mandatory and in the pleadings, Bristol stated that kidney testing was mandatory. Nowhere in the 1970 PDR Kantrex insert is the need for either of these tests stated in mandatory terms.

Bristol also recommended Kantrex for use as an irrigant in abscess wounds without specifying what type of irrigation was proper. The 1971 PDR stated that in determining the total dose all routes of administration should be taken into account, whereas the 1970 PDR contains no comparable statement. Further comparison with the 1971 PDR shows that the 1970 PDR contained no instructions requiring stoppage of drug therapy after the first dose to check for kidney damage. All references to warnings placed in the 1971 PDR, and those thereafter, have added emphasis based upon the statement of Dr. Jones, Associate Director of Medical Services for Bristol, that the information Bristol now has it had as early as 1967.

Dr. Grollman and Dr. Isensee, expert witnesses for appellee, testified that it was improper to use Kantrex where other less toxic drugs are available. Each witness further testified that this information was not contained within the 1970 PDR.

Standing between proof of a failure to warn and ultimate recovery is the necessity of proof of causation between failure to warn and the injury. *Menking v. Bishman Manufacturing Company,* 496 S.W.2d 762 (Tex.Civ.App., Corpus Christi 1973, no writ). Special issue 2 of the charge addresses this issue and the jury found that there was causation. We find that the jury's determination on this issue is adequately supported by evidence. Dr. Grollman and Dr. Isensee testified that use of Kantrex when other less toxic drugs were available was totally wrong and this information was necessary if Kantrex was to be used safely. Dr. Gonzalez testified that if he had known that use of Kantrex was totally wrong when other less dangerous antibiotics were available, he would have used a different drug.

Dr. Gonzalez further testified that he decided to use Kantrex based upon the following statement contained in the 1970 PDR.

"Kantrex Injection . . . in concentrations of 0.25 per cent . . . has been used satisfactorily as an irrigating solution in abscess cavities, plueral space, peritoneal and ventricular cavities."

This statement was bolstered by the testimony of all the physician witnesses who stated that irrigation encompassed several methods including the type administered by Dr. Gonzalez to the plaintiff. Dr. Gonzalez said that although he knew of the ototoxic propensities of Kantrex when injected intramuscularly, he did not know of such propensities when Kantrex was used as an irrigant. He also believed that absorption was minimal from irrigation and that he did not know that it was necessary to take into account such amounts in determining

ototoxic reactions. Dr. Gonzalez was of the opinion that the use of Kantrex without this information was unreasonably dangerous and he said that if he had known these facts when treating plaintiff, he would have decreased or stopped the use of Kantrex. Dr. Isensee was in agreement when he testified that the lack of information concerning absorption created an unreasonable risk of harm to the patient and that in the present case, such lack of knowledge was in all probability a contributing cause.

Further testimony of Dr. Gonzalez showed that he was unaware of the necessity to discontinue Kantrex after the first injection to test for kidney damage. He felt that use of Kantrex without this information created unreasonable risk to the patient and that if he had known this fact, he would have run the necessary tests.

In summation, it appears clear to this Court that the answers to special issues 1 and 2 of the charge are supported by legally and factually sufficient evidence. Appellant's first four points of error are overruled.

In its second category (points 5 through 10), Bristol argues that recovery is not sustainable under Section 402B, Restatement of Torts (Second) in respect to the PDR statement about irrigation. Basically, Bristol complains that the evidence supporting the jury findings in special issues 3, 4, 5 and 6 was legally and factually insufficient.

■ For Ramon to recover under this section of the Restatement, Bristol's statement in the PDR that "Kantrex injection (kanamycin sulfact injection) in concentrations of 0.25 percent (2.5 mg./ml.) has been used satisfactorily as an irrigating solution in abscess cavities," must be a misrepresentation of a material fact upon which the plaintiff justifiably relied[1] to his injury. *Crocker v. Winthrop Laboratories, Division of Sterling Drug, Inc.,* supra; *Technical Chemical Company v. Jacobs,* 480 S.W.2d

602 (Tex.Sup.1972). A Federal Court applying Texas Law stated that where a manufacturer states that a product can be used in a certain manner then the user is justified in interpreting that the product can be used safely in that manner. *Franks v. National Dairy Products,* 282 F.Supp. 528 (W.D.Tex.1968), affirmed, 414 F.2d 682 (5th Cir. 1969).

■ The testimony of all physicians during the trial reflected that the 1970 PDR statement was positive assertion that a prescribing physician could use Kantrex as a continuous irrigant. The testimony of Dr. Isensee, plaintiff's witness and head of Memorial Medical Center's staff, was probative on the issue of misrepresentation. He specifically understood the statement to be an affirmative representation that it was proper to use Kantrex as a continuous irrigant. He further testified to the extent that the 1970 PDR does not mean that a prescribing physician can use Kantrex satisfactorily in continuous irrigation it was defective, misleading and false. Dr. Gonzalez testified that his decision to use Kantrex as a continuous irrigant was partially based upon the recommendation in the 1970 PDR.

Appellant contends that the statement is not a producing cause because it must be taken into account with the whole of the 1970 PDR and that the statement is true because Kantrex has been used satisfactorily as an irrigant in post-surgical one time washes. This, however, is not the issue. The statement was a misrepresentation which Dr. Gonzalez justifiably relied upon and whether it was a producing cause relates to the use of Kantrex as a continuous irrigant.

The testimony of Dr. Jones and Dr. Lane indicated that Bristol did not know whether Kantrex could be absorbed in measurably quantities so as to create a risk ototoxic poisoning when used in continuous irrigation. Dr. Jones, however, on cross exami-

---

1. ". . . We believe that it was unreasonable to suppose that a drug manufacturer must go beyond the physician and give actual warnings to the patient. Once the physician has been warned, the choice of which drugs to use, and the duty to explain the risks involved, is his." *Gravis v. Parke-Davis & Co.,* 502 S.W.2d 863 (Tex.Civ.App., Corpus Christi 1973, writ ref'd n.r.e.).

nation stated that significant amounts of Kantrex could be absorbed in irrigation. The National Academy of Sciences and National Research Council in 1969 criticized this statement because it failed to emphasize potential toxicity from absorption and because the concentration suggested for irrigation was excessive. Bristol, nevertheless, continued to state that Kantrex could be used as an irrigant when in fact it meant for one time post-surgical wash.

Dr. Gonzalez testified that he was unaware of the ototoxic qualities of Kantrex when used as an irrigant. He also testified that if the ototoxic propensities of Kantrex as an irrigant were unknown that use of Kantrex as a continuous irrigant involved an unreasonable danger to the patient; that if he had known these facts, he would not have used Kantrex as an irrigant or would have reduced the concentration. Dr. Isensee confirmed this testimony by agreeing that the use of Kantrex without information on absorption was unreasonably dangerous.

In view of these principles and the facts set out to which they apply, we find that evidence justified the trial court's questions 3 through 6 to the jury. We also conclude from an analysis of the evidence that the jury's answers to these questions were supported by legally and factually sufficient evidence. Appellant's points of error 5 through 10 are overruled.

Next, we consider as a group appellant's points of error complaining of errors in the trial court's charge. In that regard, where a motion for new trial is required to perfect appeal, the appellate courts can consider complaints raised only by the assignments of errors within the motion for new trial. *Wagner v. Foster*, 161 Tex. 333, 341 S.W.2d 887 (1960); *Collins v. Smith*, 142 Tex. 36, 175 S.W.2d 407 (1943). Unless the error is fundamental, the appellant waives the right to complain of any ruling not assigned as error. *State Farm Mutual Automobile Insurance Company v. Cowley*, 468 S.W.2d 353 (Tex.Sup.1971).

Rules 320, 321, 322 and 374, T.R. C.P., govern the form of the assignments of

error which form the basis for appeal. Rule 320 provides that a motion "shall specify each ground on which it is founded, and no ground not specified shall be considered." Rule 321 requires that the assignments refer to the action of court complained of "in such way as that the point of objection can be clearly identified and understood by the court." Rule 322 directs that "Grounds of objection couched in general terms . . . shall not be considered by the court." Rule 374 provides that "A ground of error not distinctly set forth in the motion for new trial, in cases where a motion for new trial is required shall be considered as waived." Although Rule 1 states that rules are to be given a liberal construction, Rules 320, 321, 322 and 374 were nevertheless adopted to serve a useful purpose. There must be substantial compliance with these rules if a litigant is to have his points of error considered by an appellate court.

Appellant's 11th, 12th, 13th, 14th, 15th, 17th and 36th points of error complain of errors in the charge. Appellee asserts that these assignments of error are too general to warrant consideration by the Court. We agree.

Each of appellant's complaints is addressed either to the form of an issue submitted or to a definition used to preface a submitted issue. The objection to these submissions are contained in paragraphs 58, 59, 60, 52, 57, 53 and 61, respectively, of appellant's motion for new trial. Each paragraph is couched in the same general terms of paragraphs 52 and 57 set out as follows:

"52. The trial court erred in overruling the defendant's objections to the definition of the term 'adequate warning or instructions' as used in the Charge of the Court."

\* \* \* \* \* \*

"57. The trial court erred in overruling the defendant's objections to Question One of the Charge of the Court."

The other above mentioned paragraphs vary from the quoted paragraphs only as to

the question or definition objected to. None of the assignments of error distinctly pointed out to the trial court the matter claimed as error. The assignments of error do not comply with rules of civil procedure and appellant's points of error are waived. *Wagner v. Foster,* supra; *J. Weingarten, Inc. v. Moore,* 449 S.W.2d 452 (Tex.Sup. 1970); *Hardy v. C.P.I. Sales, Inc.,* 511 S.W.2d 89 (Tex.Civ.App., Houston [1st Dist.] 1974, no writ); *Carr v. Gregory,* 472 S.W.2d 819 (Tex.Civ.App., Corpus Christi 1971, no writ); *South Texas Natural Gas Gathering Company v. Guerra,* 469 S.W.2d 899 (Tex.Civ.App., Corpus Christi 1971, writ ref'd n. r. e.). Appellant's points 11, 12, 13, 14, 15, 17 and 36 are overruled.

Appellant's point of error 18 complains of the trial court's failure to enter an order granting indemnity to Bristol against Dr. Gonzalez. In the alternative, appellant claims that it should have been granted contribution from Dr. Gonzalez as asserted in its point 19. We sustain the contribution point, but overrule the indemnity point.

 The general rule of contribution is that where two or more persons concur in producing a single indivisible injury, then such persons are jointly and severally liable although no common duty, common design, or concerted action exists. *Austin Road Co. v. Pope,* 147 Tex. 430, 216 S.W.2d 563 (1949); *South Austin Drive-In Theatre v. Thomison,* 421 S.W.2d 933 (Tex.Civ.App., Austin 1967, writ ref'd n. r. e.).

In *Austin Road Co.,* we find the following:

"The evidence and jury findings herein clearly convict each of the tortfeasors of wrongful conduct which joined and concurred in bringing about the injury. Each party did more than merely create a condition under which the other negligently acted. The negligent conduct of each was a proximate cause of the collision and the injury inflicted was by their joint and concerted action. The act of neither was the sole proximate cause. . . . Either one or both might have prevented the wrong. Neither did. Each owed the other the same due care, and each owed the duty to exercise ordinary care for the safety of the injured party. Both violated these duties. Consequently, each was guilty of the same quality of negligence toward the injured workman. Thus they stand in pari delicto with each other and must, under the statute, share equally the burdens arising from their wrongful conduct."

This statement is analogous to the case at bar. There is independently produced fault by both Bristol and Dr. Gonzalez with both concurring to cause Ramon's injuries.

 The jury found Dr. Gonzalez' actions to be negligent and a proximate cause of Ramon's injuries. These findings are clearly supported by the evidence. Dr. Gonzalez administered intramuscularly an amount well over the recommended dosage. The therapy was not stopped when there was no clinical response within five days or after the first appearance of tinnitus (ringing in the ears). All signs of kidney damage were ignored. Neomycin was used in concentrations which exceeded the recommended dosage for irrigation. The evidence further established that these failures were a proximate cause of Ramon's injuries.

 There is, however, no case law in Texas that has been brought to our attention specifically dealing with the right of contribution where liability is based upon strict liability under Sections 402A and 402B of the Restatement of Torts (Second) and where a third party is found negligent. Even so, we believe that there is a right of contribution in such a situation based upon the following analysis.

Tex.Rev.Civ.Stat.Ann. art. 2212 states that there is a right of contribution among joint tortfeasors where the cause of action is based on "tort". Comments (b) and (d) of the Restatement of Torts (Second) Section 402A and 402B, respectively, indicate that a cause of action so based (strict liability) is a cause of action in tort. In *Ford Motor Company v. Russell & Smith Ford Company,* 474 S.W.2d 549, 561 (Tex.Civ. App., Houston [14th Dist.] 1971, no writ),

the Court said: ". . . A tort generally embraces the theory of wrong independent of contract, or as a breach of duty that the law, as distinguished from contract, has imposed. See 55 Tex.Jur.2d Torts, Sec. 1, p. 624 (1964)." Therefore, Sections 402A and 402B should be included in Article 2212.

In that Texas has adopted 402A and 402B of the Restatement of Torts (Second), an injured plaintiff in Texas is now relieved of the burden of proving that a manufacturer or seller was negligent in the manufacturing or selling of a defective product. The plaintiff's burden has thus been reduced to proving injury from the defect and that the product was defective when it left the manufacturer's or seller's hands. This reduced burden insures that the costs of the injuries resulting from defective products are borne by the marketer of the product rather than the injured person, who is powerless to protect himself. Strict liability in tort, thus, becomes a vehicle of social policy by looking to the protection of the public. 63 Am. Jur.2d Products Liability, Sec. 123. There is, however, no apparent reason to protect a negligent third person who contributes to a plaintiff's injuries. To allow contribution from the negligent third party in no way undermines the policy considerations behind 402A and 402B of the Restatement. Prior to the adoption of 402A and 402B of the Restatement, a manufacturer liable for its negligence had a right of contribution against a third party who was also negligent. *Gulf, Colorado & Santa Fe Railway Co. v. Bliss,* 368 S.W.2d 594 (Tex.Sup.1963); *South Austin Drive-In Theatre v. Thomison,* supra.

Sections 402A and 402B were adopted to insure that a person injured by a defective product was protected through strict liability. To hold, also, that these sections deprive a manufacturer or seller of a right of contribution from a negligent third party, contributing to the plaintiff's injury, would go beyond the sound policy considerations upon which these sections are founded.

In support of this position, we look to the cases of *Ford Motor Company v. Russell & Smith Ford Company,* supra and *Walters v.*

*Hiab Hydraulics, Inc., et al,* 356 F.Supp. 1000 (D.C.Md.Pa.1973). In these cases, the respective courts resolved this same issue in favor of granting contribution. See *Chamberlain v. Carborundum Company,* 485 F.2d 31 (3rd Cir. 1973); *Automobile Club Insurance Company v. Toyota Motor Sales,* 531 P.2d 1337 (Mont.1975); *Ford Motor Company v. Robert J. Poeschl, Inc.,* 21 Cal.App.3d 694, 98 Cal.Rptr. 702 (1972); *Northwestern Mutual Insurance Co. v. Stromme,* 4 Wash. App. 85, 479 P.2d 554 (1971); *Adler Quality Bakery, Inc. v. Gaseteria,* 32 N.J. 55, 159 A.2d 97 (1960).

■ In contradiction to appellant's right of contribution, appellees assert that Dr. Gonzalez is entitled to indemnity from Bristol under the following rule of *Austin Road Co. v. Pope,* supra:

". . . In order to determine whether the loss should be shifted from one tortfeasor to another the proper approach is to consider the one seeking indemnity as though he were a plaintiff suing the other in tort, and then determine whether such a one as plaintiff, though guilty of a wrong against a third person, is nevertheless entitled to recover against his co-tortfeasor."

Applying this rule, does Bristol owe Dr. Gonzalez any duty with respect to its warning? We think not. Under 402A and 402B, Bristol's duty is to the user or consumer of the drug. That individual is Ramon Gonzales. Bristol's warning is judged on its ability to communicate the danger in using Kantrex to a physician. There is no duty owed by Bristol to the physician other than to communicate the danger of the using of Kantrex. *Gravis v. Parke-Davis & Co.,* supra.

■ We hold, therefore, that contribution under the statute was proper and we reform the judgment of the trial court to hold Dr. Gonzalez liable to Bristol for one-half of the amount of the judgment. *Gulf, Colorado & Santa Fe Railway Co. v. Bliss,* supra; *Austin Road Co. v. Pope,* supra. The evidence and jury findings clearly convict each of the tortfeasors of wrongful conduct which joined and concurred in

bringing about Ramon's injuries. For the foregoing reasons, we sustain appellant's point 19 and overrule its point 18.

All of which brings us to a group of points wherein the appellant complains of the trial court's admission of evidence offered by the appellees over the objection of the appellant and the exclusion of evidence offered by the appellant upon the objection of the appellees.

■ We deem it appropriate to note here that to obtain reversal of a judgment based upon an error of the trial judge, the appellant has a two-pronged burden. First, he must show that the trial judge's determination was in fact error; second, that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *Southwestern Greyhound Lines, Inc. v. Dickson*, 149 Tex. 599, 236 S.W.2d 115 (1951); *Wilson v. City of Port Lavaca*, 407 S.W.2d 325 (Tex.Civ.App., Corpus Christi 1966, writ ref'd n. r. e.); Rule 434, T.R.C.P. (1976).

■ Appellant's point 16 complains of the exclusion from evidence of Supplemental D of the 1970 PDR. Appellee contends, in response, that if it was error, it was harmless error. We agree. Appellant contends that Supplement D was superior to the 1970 PDR warning about Kantrex. This contention is supported by the evidence. Appellant, however, fails to note that the Supplement still contains the statement recommending Kantrex for use as an irrigant. This statement is the basis of appellant's liability under 402B of the Restatement of Torts (Second). Consequently, the exclusion of this Supplement is rendered harmless because of appellant's identical liability under 402B of the Restatement.

■ In its point 20, appellant complains of the trial court's exclusion of the settlement agreement between Ramon Gonzales and Dr. Rufino Gonzalez. Appellant asserts that this evidence would reflect upon the credibility of Dr. Gonzalez by showing the true alignment of the parties. We hold that it was not error to exclude the agree-

ments on the authority of: *Texaco, Inc. v. Pursley*, 527 S.W.2d 236 (Tex.Civ.App., Eastland 1975, writ ref'd n. r. e.); *Petco Corporation v. Plummer*, 392 S.W.2d 163 (Tex.Civ.App., Dallas 1965, writ ref'd n. r. e.); *Skyline Cab Company v. Bradley*, 325 S.W.2d 176 (Tex.Civ.App., Houston 1959, writ ref'd n. r. e.). In each of these cases evidence of settlements between parties was excluded and the appellate court affirmed the decision holding the evidence inadmissible.

Even if the evidence as offered was admissible, as claimed, it was harmless error. We find no showing that the exclusion of the settlement agreement was reasonably calculated to and probably did result in the rendition of an improper judgment. This is especially so where the jury found Dr. Gonzalez negligent and where there was other expert testimony reflecting on the inadequacy of Bristol's warning. *Petco Corporation v. Plummer*, supra.

■ Appellant's points 21 and 22 complain of the exclusion of the abandoned pleadings of appellee, Ramon Gonzales. We find the exclusion to be error, but we find the error harmless.

Abandoned pleadings are admissible as declarations or admissions against interests. *Kirk v. Head*, 137 Tex. 44, 152 S.W.2d 726 (1941); *Bolin Oil Company v. M. W. Staples*, 496 S.W.2d 167 (Tex.Civ.App., Fort Worth 1973, writ ref'd n. r. e.). The trial court was, therefore, in error when it failed to allow the introduction of plaintiff's abandoned pleadings. As noted earlier, showing error is only the first step in appellant's burden. Appellant must also show that the exclusion of evidence was reasonably calculated to and probably did result in an improper judgment. There is no such showing here.

Appellant's point 23 complains of the trial court's exclusion of 1970 PDR warning on neomycin. We find that the appellant has failed to carry his burden of showing that this exclusion probably caused the rendition of an improper verdict and thus find the error harmless.

Appellant complains in his points 24 and 25 that the trial court erred in admitting PX–4 through PX–17, superseded Official Package Inserts of Kantrex, and PX–25 through 31, 35 through 54, 32, 33, and 34, appellant's advertising materials. Appellant would have this Court hold that these materials were irrelevant because Dr. Gonzalez never consulted these inserts and materials and they had been superseded by the 1970 insert. We do not agree that these inserts are irrelevant. The testimony of Mr. Lannon, Director of Regulatory Affairs for Bristol, showed these inserts to represent the knowledge of Bristol on Kantrex and the communication of such knowledge to users. In *Crocker v. Winthrop Laboratories, Division of Sterling Drug, Inc.*, supra, the Supreme Court held that a manufacturer must give an adequate warning if it knows or should know of any potential harm to users. Therefore, the inclusion of evidence which shows the information within a manufacturer's knowledge is relevant.

Appellant complains in its point 26 of the introduction into evidence of PX–21, XDX–2 and 4, subsequent Official Package Inserts, as evidence of subsequent precautionary measures. In this jurisdiction, the admission of such evidence is discouraged because it is thought that it discourages repairs. It is also true that such evidence is admissible as rebuttal evidence, to show a defect could be remedied, or to explain other evidence. *Simms v. Southwest Texas Methodist Hospital*, 535 S.W.2d 192 (Tex. Civ.App., San Antonio 1976, writ ref'd n. r. e.); 2 McCormick & Ray, Texas Evidence, § 1151, p. 43 (1956).

Dr. Jones stated that Bristol's present knowledge with regard to Kantrex has not changed since 1967. Couple this fact with subsequent changes in the Kantrex warning and there is a clear indication that the defect in the 1970 PDR could have been cured.

Even if this evidence is inadmissible, the error is harmless or waived. Insofar as these inserts are offered to prove Bristol's knowledge of the harmful propensities of Kantrex, they appear to be cumulative.

Appellee introduced testimony and physical evidence which showed the 1970 PDR warning as inadequate. Therefore, the introduction of these inserts could not be found as reasonably calculated to and to have probably caused the rendition of an improper judgment.

As a general rule, an objecting party will not be permitted on appeal to complain of a valid grounds of objection which he did not urge at the time of objection. 2 McCormick & Ray, Op. cit, § 25, p. 24; and cases cited therein. Appellant's objection to these inserts was a general objection based on relevancy and therefore waived the right to complain of the error as now asserted. *De-Garcia v. Galvan*, 55 Tex. 53 (Tex.Sup.1881); *Mueller v. Central Power & Light Company*, 403 S.W.2d 901 (Tex. Civ.App., Corpus Christi 1966, no writ).

In its points 27, 28 and 29, appellant complains of further inadmissible evidence. Under the authority of *Crocker v. Winthrop Laboratories*, supra, a manufacturer is under a duty to give adequate warning for those dangers of which it is aware. Clearly, XDX–3 (Jan. 10, 1970, Federal Register), and PX–23, (NAS/NRC Drug Efficiency Study), and PX–3 (Study on the use of Kantrex in treating tuberculosis) are probative evidence as to Bristol's knowledge on Kantrex and are admissible.

Appellant asserts that PX–23 and XDX–3 are both inadmissible as hearsay. Hearsay is inadmissible when it is offered for the truth of the statements contained therein. *Sanders v. Worthington*, 382 S.W.2d 910 (Tex.Sup.1964). See Wigmore on Evidence, 3rd ed. (1940), §§ 1745, 1766–67. These exhibits were not offered for the truth of the matters contained therein. They were offered to show that Bristol had certain knowledge prior to the issuance of the 1970 Kantrex warning.

Where evidence is admissible for one purpose but inadmissible for another, it may be admitted for the purpose for which it is competent. 23 Tex.Jur.2d, § 122 (1961). The court must upon the motion of a party

limit the evidence to its proper purposes. In the absence of such a motion, the right to complain of the improper purpose is waived. *Citadel Construction Company v. Smith*, 483 S.W.2d 283 (Tex.Civ.App., Austin 1972, writ ref'd n. r. e.); *Eubanks v. Winn*, 469 S.W.2d 292 (Tex.Civ.App., Houston [14th Dist.] 1971, writ ref'd n. r. e.). Appellant's failure to ask for limiting instruction as to the truth of the matters contained in the exhibits waived his right to complain of the improper purpose of these exhibits by the jury.

Appellant complains in point 30 that it was error to allow Dr. Richard Austin to testify about the meaning of words in the 1970 and 1972 warning on Kantrex. Appellant asserts that such testimony was inadmissible because Dr. Austin was not an expert in the area of medical terminology and his testimony invaded the province of the jury. We agree in part and disagree in part, but we do find that testimony improperly admitted was harmless error.

The testimony of Dr. Austin is divisible into categories. The first category involves interpretation of the 1970 and 1972 Kantrex warning as reflected by statements concerning the number of times "ototoxicity" appeared in the warnings. The second category involves the plain meaning of certain words as is reflected by Dr. Austin's interpretation of the word "should".

■■■ As a general rule, where the tribunal is in possession of the same information as the witness and the latter's testimony adds nothing to that information, his testimony is unnecessary and in fact encumbers the proceedings. *Cooper v. State*, 23 Tex. 331 (Tex.Sup.1859). Clearly, the boldness of the print or the number of times a word occurs in a warning is information possessed by the jury and to which Dr. Austin's testimony adds nothing. It was error for the trial court not to have excluded such testimony. We, however, do not find the inclusion of such evidence to have, in all probability, led to the rendition of an improper judgment and we find the error to be harmless.

■■■ The second category is interpreted to be expert testimony. The admission of expert testimony is based upon the witness' special knowledge gained through his experience or schooling which the jury does not have and, therefore, the expert is better equipped to draw a conclusion on the subject than the jurors. 2 McCormick & Ray, op. cit. § 1400, p. 233. Dr. Austin's qualifications reflect that his experience and training include the efficiency of communications, the manner in which persons perceive communication between people and the impact of words on people.

In *Bituminous Casualty Corporation v. Black and Decker Manufacturing Co.,* supra, the court stated: ". . . the question of whether or not a given warning is legally sufficient depends upon the language used and the impression that such language is calculated to make upon . . . the average user of the product." The "average user" in this instance is the physician and not the patient; Bristol's warning is directed, therefore, to the physician. *Gravis v. Parke-Davis & Co.*, 502 S.W.2d 863 (Tex.Civ.App., Corpus Christi 1973, writ ref'd n. r. e.). The testimony of Dr. Austin is relevant, however, on the impact of the warning in view of the holding in *Bituminous Casualty Corporation* and the wide discretion of a trial judge about the admission of expert testimony. 2 McCormick & Ray, op. cit. § 1481, p. 328.

Appellant's point 31 complains of the admission of leading questions directed to Dr. Fordtran. We find the admission of such questions to be harmless error because there is no showing that such questions probably led to the rendition of an improper judgment.

■■■ Appellant asserts in his point 32 that the trial court erred in allowing cross-examination of Dr. Jones and Dr. Isensee, but not Dr. Gonzalez with the use of the medical text *Goodman & Gillman*. In *Bowles v. Bourdon*, 149 Tex. 1, 219 S.W.2d 779 (1949), the Supreme Court held that a standard medical text cannot be introduced as direct evidence but where a physician testifies to disease or injury as an expert

and he recognizes a medical text as authority, excerpts may be read from the text to discredit or test the weight of his testimony. *Seeley v. Eaton,* 506 S.W.2d 719 (Tex. Civ.App., Houston [14th Dist.] 1974, writ ref'd n. r. e.). Dr. Jones, Dr. Isensee and Dr. Gonzalez all recognized *Goodman & Gillman* as authority. Therefore, cross-examination based upon the text was permissible as to each doctor. The trial court's refusal to allow cross-examination of Dr. Gonzalez based upon *Goodman & Gillman* was error. This error was rendered harmless though when the jury found Dr. Gonzalez negligent.

In its point 33, appellant contends that the testimony of Dr. Thomas Mayor, economist, was speculative and, therefore, inadmissible. We believe that our recent holding in *Borak v. Bridge,* 524 S.W.2d 773 (Tex.Civ.App., Corpus Christi 1975, writ ref'd n. r. e.) is controlling about the admissibility of the type of evidence complained of here. The appellant's contention, therefore, is without merit.

■ Appellant's point 34 complains of the trial court's refusal to allow cross-examination of Dr. Thomas Mayor, economist, on the cost of producing income. We find no cases which have discussed this assertion before, but the decision of *John F. Buckner and Sons v. Allen,* 289 S.W.2d 387 (Tex.Civ. App., Austin 1956, no writ) is helpful. In *Buckner,* the appellant complained of the failure to include the amount of money appellee would pay in taxes in the instructions to the jury. Court of Civil Appeals affirmed, holding the jury's duty was to compensate appellee for his injuries and not to determine how she might spend or be obligated to spend such compensation. Appellant's cross-examination of Dr. Mayor was directed at the required expense of producing income. We believe this is analogous to the payment of income tax excluded in *Buckner.* We, therefore, find no error in the exclusion of this evidence.

Further, if it was error to disallow cross-examination on this point, it was harmless error. Dr. Mayor testified that the present value necessary to compensate plaintiff for his injuries would be $990,157.00 if he obtained an income level of $25,000.00 or $1,737,057.00 if level was $45,000.00 in fifteen years. He also testified that the inclusion of the necessary expenses of producing income was not "qualitatively significant". The jury rendered a verdict for the plaintiff in a sum of $800,000.00, well below either of the sums predicted by Dr. Mayor.

We overrule all of appellant's foregoing points about the admission of and the exclusion of evidence. Specifically, these are points 16, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33 and 34.

■ Appellant's point 35 complains of the closing argument of the attorney for third-party defendant, Dr. Gonzalez. That argument was as follows:

"MR. MADDIN: . . . Dr. Bristol, let me tell you something. Dr. Rufino Gonzalez was born. He wasn't created by a board of directors. He breathes. He lives. He suffers. And he will die.

MR. MEREDITH: Your Honor, that's a direct attempt to try to prejudice the jury because my client is a corporate client versus an individual, exactly what the Court instructed not to do.

THE COURT: The objection is overruled.

MR. MADDIN: But Bristol-Myers can be created by this board of directors as long as they can sell this stuff and will go on forever. It has no soul. It has no conscience. It has no existence outside of the people that print this stuff and sell these drugs. But Dr. Rufino Gonzalez is a victim in this case, just exactly like that pitiful specimen sitting over there is a victim in this case, and he's a victim of the good old American hard-sell. A hard-sell."

This argument was probably error under the holdings of the following cases: *Allis-Chalmers Mfg. Co. v. Board,* 118 S.W.2d 996 (Tex.Civ.App., Amarillo 1938, no writ); *Texas Indemnity Ins. Co. v. Carson,* 21 S.W.2d 691 (Tex.Civ.App., El Paso 1929, writ dism'd); *Home Life & Accident Co. v. Jordan,* 231 S.W. 802 (Tex.Civ.App., Dallas

1921, no writ); *Houston & T. C. R. Co. v. Long,* 219 S.W. 212 (Tex.Civ.App., El Paso 1920, no writ). Even if the argument be error, it was not reversible error. The matters about which appellant complains do not constitute prima facie proof of harm. Especially is this so when we consider the reference to the appellant as "Dr. Bristol" by appellant's attorney; the jury finding of negligence against Dr. Gonzalez; and the further jury finding of less damage to Ramon than the testimony of Dr. Mayor would support.

As we have noted, under Rule 434, a party complaining of error must show that such argument was reasonably calculated to, and probably did, cause the rendition of an improper judgment. In our case, there is no such showing. Accordingly, appellant's point 35 is overruled.

██ Appellant's point 37 is addressed to the size of the jury's verdict for Ramon Gonzales. It was in the sum of $800,000.00 for the loss of future and past wage earning capacity; loss of future and past physical capacity, other than wage earning capacity; and future and past mental anguish. Appellant asserts that the trial court erred in overruling defendant's motion for new trial because there was no evidence to support the jury's verdict; the verdict was contrary to the great weight and preponderance of the evidence; and the jury's verdict was the result of bias and prejudice against the appellant. Appellant also argues that the trial court should have ordered a remittitur.

At the time of the accident, Ramon Gonzales was 25 years old with a projected work age to 61.7 years. Prior to the accident, he appeared to have been an outgoing, an industrious, and a hard-working adult male. It is clear from the record that he sustained injuries resulting in total, permanent, bilateral deafness.

Jan Foster, a speech psychologist and a supervisor of Mr. Gonzales' work, testified that since the accident, the appellant has become withdrawn and frustrated. Testimony of Dr. Austin, a clinical psychologist, confirmed this conclusion. Mrs. Foster further testified that plaintiff's verbal ability has been lost in Spanish and is rapidly deteriorating in English. To maintain this ability, she believed that therapy would be necessary. Dr. Austin, a clinical psychologist, evaluated plaintiff's I.Q. at 126. This score placed Ramon Gonzales in the upper 10% of the test scale, indicating a very productive life. Dr. Austin, also, testified that plaintiff was suffering from frustration caused by conflict in his ability and his now limited capacity. To control this build up of frustration, counseling was recommended initially on a weekly basis and then as needed.

Dr. Thomas Mayor testified that a person with plaintiff's potential in the field of social services making $600.00 a month presently could expect rapid advancement and that after 15 years, his income would be in the $25,000.00 per year category.

██ Appellant makes no contention that the damages suffered by Ramon Gonzales are inconsequential, but takes the position that by comparison with other cases the award is so grossly excessive, that it must have been produced by passion, prejudice or other improper motive of the jury. We do not agree. The damages in cases of this nature cannot be proven with the certainty and accuracy as it can in other cases. *Continental Bus System, Inc. v. Toombs,* 325 S.W.2d 153 (Tex.Civ.App., Fort Worth 1959, writ ref'd n. r. e.). Therefore, the question of damages is properly left with the jury. *Rosenblum v. Bloom,* 492 S.W.2d 321 (Tex. Civ.App., Waco 1973, writ ref'd n. r. e.); *South Texas Natural Gas Gathering Company v. Guerra,* 469 S.W.2d 899 (Tex.Civ. App., Corpus Christi 1971, writ ref'd n. r. e.); *Saper v. Rodgers,* 418 S.W.2d 874 (Tex. Civ.App., Houston [1st Dist.] 1967, writ ref'd n. r. e.). In the absence of a clear showing that passion, prejudice or other improper matters influenced the jury the amount assessed will not be set aside as excessive. *Borak v. Bridge,* 524 S.W.2d 733 (Tex.Civ.App., Corpus Christi 1975, writ ref'd n. r. e.); *Bond v. Duren,* 520 S.W.2d 460 (Tex.Civ.App., Waco 1975, writ ref'd n. r. e.); *Skillern & Sons, Inc. v. Stewart,* 379

S.W.2d 687 (Tex.Civ.App., Fort Worth 1964, writ ref'd n. r. e.); *Camco, Incorporated v. Evans,* 377 S.W.2d 703 (Tex.Civ.App., San Antonio 1964, writ ref'd n. r. e.).

■ In the alternative, appellant has requested remittitur under Rule 440, T.R.C.P. In considering the excessiveness of compensation under remittitur, we are required to exercise sound judicial judgment and discretion in the ascertainment of what constitutes reasonable compensation for the injury suffered. *Flanigan v. Carswell,* 159 Tex. 598, 324 S.W.2d 835 (1959); *Wilson v. Freeman,* 108 Tex. 121, 185 S.W. 993 (1916).

■ There is no certain standard by which personal injury damages can be measured, and each case must stand on its own facts and circumstances, and a comparison with other cases on amounts of verdicts therein is of little or no help. *Broesche v. Bullock,* 427 S.W.2d 89 (Tex.Civ.App., Houston [14th Dist.] 1968, writ ref'd n. r. e.); *J. A. Robinson Sons, Inc. v. Ellis,* 412 S.W.2d 728 (Tex.Civ.App., Amarillo 1976, writ ref'd n. r. e.); *Claunch v. Bennett,* 395 S.W.2d 719 (Tex.Civ.App., Amarillo 1965, no writ); *Graham v. Morris,* 366 S.W.2d 792 (Tex.Civ. App., Amarillo 1963, no writ); *Missouri Pacific Railroad Company v. Handley,* 341 S.W.2d 203 (Tex.Civ.App., San Antonio 1960, no writ); *Higginbotham v. O'Keeffe,* 340 S.W.2d 350 (Tex.Civ.App., Amarillo 1960, writ ref'd n. r. e.); *Green v. Rudsenske,* 320 S.W.2d 228 (Tex.Civ.App., San Antonio 1959, no writ); *Hayter Lumber Co. v. Winder,* 295 S.W.2d 730 (Tex.Civ.App., Beaumont 1956, writ dism'd). This rule is based upon the sound policy consideration that the same loss will occasion different damages to different individuals depending upon mental aptitude and the effect of injuries on earning capacity. *Claunch v. Bennett,* supra.

In view of these principles and the facts of this case, we do not find the judgment, in our judicial discretion, to be excessive. Appellant's request for remittitur is denied. Appellant's point 37 is overruled.

In its final point (38), appellant argues that the judgment below should be reversed because of the cumulative effect of the foregoing errors complained of. For the reasons heretofore set out in our discussion of the foregoing points, we overrule appellant's point 38.

We have held in the forepart of this opinion that contribution is proper under the evidence and jury findings of this case. Consequently, we reform the judgment of the trial court and hold Dr. Gonzalez liable to Bristol for one-half of the amount of the judgment. Also, costs are taxed one-half to each of those parties.

As reformed, the judgment of the trial court is AFFIRMED.

## OPINION ON MOTION FOR REHEARING

Bristol, defendant-appellant, in its motion for rehearing complains about the manner we implemented our holding regarding Bristol's right to contribution.

Instead of our holding Dr. Gonzalez, cross-defendant-appellee, liable to Bristol for one-half of the amount of the judgment, Bristol contends that we should have reduced the judgment amount by one-half under the doctrine of *Palestine Contractors, Inc. v. Perkins,* 386 S.W.2d 764 (Tex.Sup. 1964). In *Perkins,* our Supreme Court held that where one joint tortfeasor settles with the injured party and receives a covenant not to sue, the injured party is precluded from recovering more than one-half of his damages from the non-settling tortfeasor.

The settlement between Ramon Gonzales and Dr. Gonzalez was sufficiently similar to the settlement in *Perkins* to lend merit to Bristol's position.

Accordingly, we now reform the judgment of the trial court so as to award Ramon Gonzales judgment against Bristol in the sum of $400,000.00 together with interest as provided by law. Also, costs are taxed one-half to Ramon Gonzales and one half to Bristol.

Bristol's motion for rehearing is in all other respects overruled.